In the Matter of the MARRIAGE OF
David Daniel READ and Carol
Duborg Read.

No. 9347.

Court of Appeals of Texas,
Amarillo.

May 12, 1982.

Rehearing Denied June 3, 1982.

Gary W. Barnard, Stokes, Carnahan & Fields, Amarillo, for appellant.

Robert L. Templeton, Templeton & Garner, Amarillo, for appellee.

Before DODSON, COUNTISS and BOYD, JJ.

BOYD, Justice.

This is an appeal from a suit for dissolution of marriage. The division of property

made by the trial court is attacked by appellant David Daniel Read in eight points of error, which will be more fully set out hereafter. We affirm the judgment of the trial court.

The record indicates that the parties were married on May 31, 1977. The marriage was dissolved on December 1, 1980. No children were born to or adopted by the parties during the marriage. Prior to the marriage, appellant was engaged in the oil and gas business, and appellee Carol Duborg Read was employed as a dental hygienist.

The division of property was made by the trial court by virtue of the mandate of Tex.Fam.Code Ann. § 3.63 (Vernon 1974), which provides for a division of the parties' estate in a manner that the court deems just and right, having due regard for the rights of each party. While there is no specific statutory authority expressly providing for assessment of an attorney fee, an attorney fee may be awarded and considered as a factor in making an equitable division of the estate, considering the conditions and needs of the parties and all of the surrounding circumstances. *Carle v. Carle*, 149 Tex. 469, 234 S.W.2d 1002, 1005 (1950). The statute does not require an equal division of the community estate, *Williams v. Williams*, 160 Tex. 99, 325 S.W.2d 682, 684 (1959), and, before an appellate court is authorized to interfere with the division made by the trial court, it must be shown that the court abused its discretion by making a division manifestly unjust and unfair. *Hedtke v. Hedtke*, 112 Tex. 404, 248 S.W. 21, 23 (1923). In considering the appellant's contention that the division of the property constituted an abuse of discretion, it is the duty of this court to indulge every reasonable presumption in favor of a proper exercise of discretion by the trial court in dividing the properties of the parties. *Thompson v. Thompson*, 380 S.W.2d 632, 636 (Tex. Civ.App.—Ft. Worth 1964, no writ).

In his first point, appellant asserts error in the award of "attorney and accountant fees on the basis that the evidence was insufficient to support such award and there were no pleadings to support the award of accounting fees." Initially, we note that in the judgment as actually entered, there is no award for accountant fees. An award in the amount of $5,000.00 for attorney fees was made.

When considering factual insufficiency points of error, the reviewing court is to examine the record to determine if the evidence supporting the finding is so weak, and the evidence to the contrary so overwhelming, that the finding should be set aside. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). The testimony establishes that this case involved considerable property and problems of great complexity in the determination of the separate or community nature of the marital estate, including the concomitant problems of tracing bank deposits, expenditures of funds and other items of like nature. The testimony of both lawyers establishes that a charge of $60.00 to $65.00 per hour would be fair and reasonable, and appellee's attorney's testimony establishes that he spent at least one hundred twenty hours in preparation for this divorce. We believe the evidence is sufficient to justify this award.

The case of *Smith v. Horton*, 485 S.W.2d 824 (Tex.Civ.App.—Texarkana 1972, writ dism'd), cited by appellant, is inapposite. The court in that case was not primarily concerned with the sufficiency of the evidence to support an award of attorney fees. In reviewing the facts there established, the determination of the court was that the award of any attorney fees was inequitable, in view of the division of community assets already made. *Id.*, at 830. That is not the question presented by this point of error. Moreover, for reasons hereinafter stated, we do not find the division of property in this case would make such an award inequitable. Appellant's point of error one is overruled.

In point of error two, appellant contends error in the award to appellee of the "Merrill Lynch ready assets" as her separate property. He argues that the undisputed evidence shows at least a portion of

these funds were community property. The record shows that at the time of the dissolution of the marriage, there existed an account called the "Merrill Lynch Ready Assets Account" with a balance of approximately $10,000.00. Of that amount, the testimony shows, $7,000.00 was the separate property of appellee. The record does establish that approximately $3,000.00 of the account were community proceeds acquired by appellee after marriage.

We note that, while the account is denominated in the divorce decree as the "Merrill Lynch ready assets which are Petitioner's separate property," it is listed there in sequence with the other items awarded to appellee in the division of the property. In the absence of findings of fact to the contrary, and under the presumptions mandated upon us, we must presume that the trial court took into consideration the mixed mature of the account in making its division of property, and intended to award appellee all of the account, both separate and community. We find no abuse of discretion in the court's award to appellee of the $3,000.00 community portion of the account. Point of error two is overruled.

In point three, appellant asserts error in the award to appellee of a one-half interest in the oil and gas leases denominated as Banks-Nielson and Banks-Booth. Appellant argues that this award constituted a divestiture of his separate property prohibited by law. In our discussion of this point, as well as subsequent points, we must take note of the trial court's finding of fact that appellant was engaged in exploration and production of oil and gas as his business and profession; a finding which we conclude is amply supported by the evidence in the case. It is also necessary to take note of certain basic principles of law governing the determination of property as separate or as community.

 The separate or community status of property is determined by the facts and circumstances existing at the time of acquisition, *Smith v. Buss*, 135 Tex. 566, 144 S.W.2d 529, 532 (1940), and it is axiomatic that all property acquired during marriage is presumptively community. Tex.Fam. Code Ann. § 5.02 (Vernon 1975). This presumption may be overcome only by clear and satisfactory evidence, *Van v. Webb*, 147 Tex. 299, 215 S.W.2d 151, 152 (1948), and to discharge this burden of proof, the party asserting otherwise must trace and clearly identify the origins of property claimed as separate. *Tarver v. Tarver*, 394 S.W.2d 780, 783 (Tex.1965). When the evidence shows that separate and community property have been so comingled as to defy resegregation and identification, the burden is not discharged and the statutory presumption that the entire mass is community controls its disposition. *Id.*

 Property or rights acquired by one of the spouses after marriage by toil, talent, industry or other productive faculty is community property. *Norris v. Vaughan*, 152 Tex. 491, 260 S.W.2d 676, 680 (1953). It follows, we think, that when the acquisition and development of oil and gas interests are engaged in as a business, the profits therefrom are community. *Id.*, 260 S.W.2d, at 682. The fact that separate funds may have been used in the development or operation of such oil and gas interests does not change the separate or community status of the property but only, if properly proved, entitles the separate estate to reimbursement. *Id.*

 It is evident from the testimony that there was substantial comingling of separate and community funds. The record reveals that payments on the two leases in question were made out of account number 305197 in the First National Bank, Amarillo, Texas. Deposits of income from oil and gas rights acquired after marriage were placed into this account together with income from wells existing prior to the marriage. The record establishes that there had been deposited to this account income from wells either drilled or acquired after marriage, in the amount of $2,796.00 in the year 1977; $94,000.00 in the year 1978; $143,000.00 in 1979, and an undetermined amount during 1980. Out of this account, the only identified withdrawals are part of the acquisition and development costs for

the wells in question. We next apply these principles and facts to the leases in question.

### Banks-Nielson Lease

Briefly summarized, the evidence in connection with this lease appears to be:

1. The agreement on this lease was made either on July 1, 1977 or, according to appellant's testimony, on July 5, 1977. First payment from production on this lease was received on July 1, 1977.

2. Appellant testified that he made "the deal" on July 5, 1977 and the bill was paid on August 16, 1977. The amount of payment is not shown.*

3. The total investment in the lease was apparently $55,627.00. However, no breakdown as to dates of payment, amounts of the various payments, if more than one, or payees and reason for payment appears in the record.

4. While the record shows numerous deposits to the account from sources appellant characterizes as his separate property, it is impossible from this record to relate them to disbursements which, we believe, is a necessary incident to a proper tracing and identification of separate property. *See Latham v. Allison*, 560 S.W.2d 481, 485 (Tex.Civ.App.—Ft. Worth 1977, writ ref'd n. r. e.).

Succinctly stated, under the guidelines we are obligated to follow, we do not find the evidence sufficient to show that the court abused its discretion in the award of an undivided one-half interest in this lease or that the award constituted a divestiture of the separate property of the appellant. The property was acquired subsequent to marriage and was presumptively community. The record is insufficient to rebut that presumption. Assuming, arguendo, that separate funds were used to develop the lease, the community's acquired rights were fixed and determined at the time of the acquisi-

tion of the agreement and could not be nullified by the use of such separate funds to develop the lease. *Norris v. Vaughan, supra.*

### Banks-Booth Lease

Briefly summarized, the evidence relating to this lease is

1. The date an agreement was signed covering this property was January 18, 1978. Although an exhibit tendered by appellant shows an agreement to acquire on April 29, 1977, the record reveals that was merely an oral agreement which, of course, would be subject to the barrier of the statute of frauds.

2. The record shows a total investment of $31,529.00 in development expenses. There is no itemization as to dates of payment, purposes or objects for which the payment was made and no designation as to payees nor, indeed, from which bank account they were made. They apparently were made on or subsequent to the drilling of the well on February 16, 1978.

There is sufficient testimony in the record to justify the finding of the court that this lease constituted community property. No abuse of the court's discretion is shown in the award to appellee of an undivided one-half interest in this property. Appellant's point of error three is overruled.

█ By point of error four, appellant finds error in the failure of the court to allow a community credit for the expenditure of $2,000.00 of community funds in reducing the debt on appellee's separate real property.

Initially, we note there are no pleadings on the part of appellant seeking any such relief. For any such recovery to be made, there must be filed a proper pleading. *Lindsay v. Clayman*, 151 Tex. 593, 254 S.W.2d 777, 781 (1952). Moreover, there is no showing that the court did not take this

---

* While it might be inferred from appellant's testimony that "the deal" was for the purchase

price, the record is unclear on this point.

equitable right to reimbursement into account in its division of property. In the absence of such a showing and, in pursuance of the presumption that the trial court exercised its discretion properly, we must assume the court took this into consideration in its division of property. *Looney v. Looney*, 541 S.W.2d 877, 878 (Tex.Civ. App.—Beaumont 1976, no writ). Point of error four is overruled.

In point of error five, appellant argues that, in awarding the sum of $72,-000.00 cash to appellee, the court failed to consider that the vast majority of the cash awarded to appellee was from appellant's separate property, hence, the award to appellee amounted to a divestiture of appellant's separate property. We do not agree. While it is true that appellant had considerable income from his separate property, the record shows an increase in domestic production from an annual income of $77,-000.00 per year at the time of marriage to $240,000.00 at the time of divorce. The record supports a finding by the court that this income was from wells acquired after marriage.

Monthly gross income from oil and gas increased during marriage from about $30,-000.00 per month to $50,000.00 per month. The record supports a finding by the court that the bulk of this increase was from new domestic oil and gas production. Cash, certificates of deposit, and balances in checking accounts increased from $51,287.00 at the time of marriage to $235,000.00 at the time of divorce. The value of stocks and bonds increased from $131,000.00 at the time of marriage to $280,000.00 at the time of divorce.

The record shows further that the primary oil and gas account ( # 305197 at the First National Bank of Amarillo, Texas) contained intermingled community and separate income, and the withdrawals from this account were not shown at trial in a detailed and traceable manner. The record supports a conclusion on the part of the trial court that the wells acquired after marriage and most of the remaining income were acquired as a result of the business acumen and talent of appellant, a community asset. In summary, the evidence is not sufficient to show that the award of the court constituted an abuse of discretion, or was manifestly unjust and unfair, or that appellant was required to divest himself of separate property.

The cases of *Lindsey v. Lindsey*, 564 S.W.2d 143 (Tex.Civ.App.—Austin 1978, no writ) and *Farrow v. Farrow*, 238 S.W.2d 255 (Tex.Civ.App.—Austin 1951, no writ) may be distinguished. In each of those cases, full and complete records as to not only income, but also expenditures, were before the court.

The burden a claimant must meet in tracing separate property is proof by clear and satisfactory evidence. *Wilson v. Wilson*, 145 Tex. 607, 201 S.W.2d 226, 227 (1947). In any event, in this case, without a detailed record of expenditures as well as deposits, appellant's burden has not been met.

Appellant also cites the case of *Horlock v. Horlock*, 533 S.W.2d 52 (Tex.Civ.App.— Houston [14th Dist.] 1975, writ dism'd), as authority for his position that the trial court should have allowed appellant full reimbursement for the proportion of his separate property used to develop wells acquired after marriage. That case, too, is distinguishable. The holding in *Horlock* was that the trial court, in the exercise of its equitable powers, was justified in awarding the husband a separate estate reimbursement. *Id.*, at 58. The question in this case and under this point of error, is whether the court, in the exercise of its equitable powers, was justified in making this award. As stated above, we do not find this exercise an abuse of discretion. Point number five is overruled.

By point six, appellant asserts that the trial court erred in partitioning real property interests in foreign realty. While the court did not have in rem jurisdiction over the foreign realty, it did have in personam jurisdiction over the person of both appellant and appellee. The trial court can consider the existence and value of such realty in dividing the community property

of the parties and, in the exercise of its equitable powers, order one party to execute a conveyance of the out of state property to the other party. *Matter of Marriage of Glaze*, 605 S.W.2d 721, 724 (Tex. Civ.App.—Amarillo 1980, no writ). This was the procedure followed here by the trial court. Appellant's point of error six is overruled.

In point seven, error is argued because the trial court did not award appellant an interest in real property on hand at the time of divorce in proportion to the ratio which appellant's separate funds bore to the entire purchase price of the property. As pointed out in more detail in the discussion of earlier points, the record is insufficient to establish by clear and convincing evidence the proportionate amounts of separate and community property used in the purchase of the realty. We do not find that the division made by the trial court constituted an abuse of its discretion. Point seven is overruled.

In point eight, error is asserted in the failure to reimburse appellant's separate estate for the expenditure of separate funds used in developing community assets. We have carefully reviewed the record, and, for the reasons more fully set forth in the discussion of earlier points, do not find this failure on the part of the trial court to exercise its equitable right to order reimbursement an abuse of its discretion.

There being no reversible error, the judgment of the trial court is affirmed.